IN THE

# ARIZONA COURT OF APPEALS

## DIVISION TWO

---

EMILY ANN MCGUIRE,
*Petitioner*,

*v.*

HON. KENNETH LEE, JUDGE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent*,

*and*

THE STATE OF ARIZONA,
*Real Party in Interest*.

No. 2 CA-SA 2016-0012
Filed April 28, 2016

---

Special Action Proceeding
Pima County Cause No. CR20160035001

**JURISDICTION ACCEPTED; RELIEF DENIED**

---

COUNSEL

Dean Brault, Pima County Legal Defender
By Kristine Alger, Assistant Legal Defender, Tucson
*Counsel for Petitioner*

Barbara LaWall, Pima County Attorney
By Nicolette Kneup, Deputy County Attorney, Tucson
*Counsel for Real Party in Interest*

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Judge Miller and Judge Staring concurred.

V Á S Q U E Z, Presiding Judge:

**¶1**       In this special action, fifteen-year-old Emily McGuire contends the respondent judge erred by denying her motion to dismiss the underlying armed robbery prosecution and to transfer the matter to the juvenile court.  She contends that, because a simulated weapon was used during the alleged robbery, it is not a violent offense and she is not, therefore, subject to mandatory prosecution as an adult pursuant to article IV, pt. 2, § 22 of the Arizona Constitution and A.R.S. § 13-501(A).  Although we accept jurisdiction of this special action, we deny relief because the respondent did not abuse his discretion in concluding the plain language of § 13-501 and A.R.S. § 13-1904, the armed robbery statute, require that McGuire be prosecuted as an adult.

**Factual and Procedural Background**

**¶2**       The following facts are either undisputed or are established by the record before us, including the grand jury testimony of a sheriff's detective.  A male with a hood over his head and his face covered approached the victim, who was in her car in the parking lot of a Tucson restaurant, pointed a gun at her, and demanded that she give him her purse.  The victim complied, and the perpetrator ran from the scene with another person, whose head and face were also covered.  Pima County Sheriff's Deputies apprehended fourteen-year-old J.M.  He initially stated his sister, McGuire, was the robber and he had been the lookout, but he later admitted he had approached the victim with a toy gun and demanded her purse.  Sheriff's deputies then found McGuire, who told them that she had been the lookout and that J.M. had robbed the victim.  J.M. also told deputies they had left the purse in the yard

of a house. Deputies found the purse and the toy gun the next day in a yard near the area where they had found J.M. and McGuire.

¶3         A sheriff's deputy initially took J.M. and McGuire to the Pima County Juvenile Detention Center. Because of McGuire's age and the type of offense involved, however, the deputy then transported her to the Pima County Adult Detention Center. About two weeks later, in early 2016, McGuire was charged by indictment with armed robbery and aggravated robbery. She filed a Motion to Dismiss, or in the Alternative, to Transfer to Juvenile Court, arguing she was not subject to mandatory prosecution as an adult. She maintained that because the "plain language" of § 13-501 "reveals two reasonably plausible interpretations, it is ambiguous." She contended that based on all subsections of the statute, read together, as well as the intent behind article IV, pt. 2, § 22 of the Arizona Constitution, a juvenile who commits armed robbery with a simulated weapon, a toy gun in this case, has not committed a violent offense and is not subject to mandatory prosecution as an adult.

¶4         The respondent judge disagreed with McGuire. Based on the language of § 13-501 and the armed robbery statute, § 13-1904, he concluded McGuire must be prosecuted as an adult and denied her motion. This special action followed.

## Special-Action Jurisdiction

¶5         The order McGuire challenges is interlocutory in nature and may not be appealed directly. *See State v. Lee*, 236 Ariz. 377, ¶ 9, 340 P.3d 1085, 1088-89 (App. 2014). In addition, the issues raised involve pure questions of law regarding the interpretation and application of statutes and an amendment to our constitution. *Id.* And, the question of whether a juvenile who is fifteen years of age or older and has been charged with armed robbery involving the use of a simulated weapon must be charged as an adult is a question of first impression and statewide importance. *State v. Bernini*, 230 Ariz. 223, ¶ 5, 282 P.3d 424, 426 (App. 2012). For these reasons, in the exercise of our discretion, we accept jurisdiction of this special action.

**Discussion**

¶6         We may grant special-action relief only when a respondent judge has, inter alia, abused his discretion. *See* Ariz. R. P. Spec. Actions 3(c).  An abuse of discretion includes an error in interpreting or applying the law. *Sierra Tucson, Inc. v. Lee*, 230 Ariz. 255, ¶ 22, 282 P.3d 1275, 1281 (App. 2012).  The interpretation and application of statutes and the constitution are questions of law, which we review de novo. *See Lee*, 236 Ariz. 377, ¶ 9, 340 P.3d at 1089 (statutes); *Univ. Med. Ctr. Corp. v. Dep't of Revenue*, 201 Ariz. 447, ¶ 14, 36 P.3d 1217, 1220 (App. 2001) (statutes and constitution).

¶7         In 1996, the electorate of the State of Arizona amended the constitution, adding article IV, pt. 2, § 22 by passing the Juvenile Justice Initiative, also known as Proposition 102. *See State v. Davolt*, 207 Ariz. 191, ¶ 100, 84 P.3d 456, 479 (2004).  The express intent of the amendment was "to preserve and protect the right of the people to justice and public safety, and to ensure fairness and accountability when juveniles engage in unlawful conduct . . . ."  Ariz. Const. art. IV, pt. 2, § 22.  It was designed "to make possible more effective and more severe responses to juvenile crime." *Davolt*, 207 Ariz. 191, ¶ 100, 84 P.3d at 479.  "[A]ccordingly, it required the state to prosecute juveniles as adults in specified circumstances." *Lee*, 236 Ariz. 377, ¶ 15, 340 P.3d at 1090.  The amendment created two categories of juveniles who must be prosecuted as adults: juveniles fifteen years of age or older who are "accused of murder, forcible sexual assault, armed robbery or other violent felony offenses as defined by" the legislature, and chronic felony offenders, also as defined by the legislature.  Ariz. Const. art. IV, pt. 2, § 22(1).  It left to the discretion of prosecutors the decision whether to prosecute as adults certain juveniles who are not chronic felony offenders and who commit non-violent offenses.  Ariz. Const. art. IV, pt. 2, § 22(2).

¶8         The legislature enacted § 13-501 in 1997 "in order to effectuate and implement" the constitutional amendment. *Lee*, 236 Ariz. 377, ¶ 15, 340 P.3d at 1090.  The statute provides, in relevant part, as follows:

> A. The county attorney shall bring a criminal prosecution against a juvenile in

the same manner as an adult if the juvenile is fifteen, sixteen or seventeen years of age at the time the alleged offense is committed and the juvenile is accused of any of the following offenses:

1. First degree murder in violation of § 13-1105.

2. Second degree murder in violation of § 13-1104.

3. Forcible sexual assault in violation of § 13-1406.

4. Armed robbery in violation of § 13-1904.

5. Any other violent felony offense.

6. Any felony offense committed by a chronic felony offender.

7. Any offense that is properly joined to an offense listed in this subsection.

§ 13-501.

¶9        Section 13-1904, referred to in § 13-501(A)(4), provides that "[a] person commits armed robbery if, in the course of committing robbery" under A.R.S. § 13-1902, the "person or an accomplice:  1. Is armed with a deadly weapon or a simulated deadly weapon; or 2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon."  In addition to offenses specified in § 13-501(A)(1) through (A)(4), pursuant to § 13-501(A)(5) the legislature added the following "other violent felony offense[s]" in § 13-501(H)(4):  aggravated assault (serious physical injury), aggravated assault (use of a deadly weapon or dangerous instrument), drive-by shooting, and discharge of a firearm at a structure.

¶10        "'Our primary task in interpreting statutes is to give effect to the intent of the legislature.'"  *Lee*, 236 Ariz. 377, ¶ 16, 340 P.3d at 1090, *quoting In re Estate of Winn*, 214 Ariz. 149, ¶ 8, 150 P.3d 236, 238 (2007).  Similarly, "[w]hen a court interprets the scope and meaning of an amendment to Arizona's Constitution, its primary purpose is to achieve the intent of the electorate that adopted the amendment."  *In re Cameron T.*, 190 Ariz. 456, 460, 949 P.2d 545, 549 (App. 1997); *see also Fields v. Elected Officials' Ret. Plan*, 234 Ariz. 214, ¶ 19, 320 P.3d 1160, 1165 (2014).  The plain language of a statute or constitutional amendment is the best indicator of the intent of the legislature in enacting the statute, *Lee*, 236 Ariz. 377, ¶ 16, 340 P.3d at 1090-91, and the intent of the electorate in amending the constitution, *Soto v. Superior Court*, 190 Ariz. 450, 454-55, 949 P.2d 539, 543-44 (App. 1997).  "'If the language is clear and unambiguous, we generally must follow the text of the provision as written.'"  *Id.*, *quoting Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994).  When the terms are clear, we do not "employ principles of statutory construction to determine the legislature's intent."  *Lee*, 236 Ariz. 377, ¶ 16, 340 P.3d at 1091.  Rather, we give words their plain meaning unless the statute provides a specific definition for its terms "'or the context clearly indicates that a special meaning was intended.'"  *Id.*, *quoting State v. Jones,* 222 Ariz. 555, ¶ 14, 218 P.3d 1012, 1016 (App. 2009).

¶11        McGuire argues that "[a]t best, the statute's plain language, when interpreted in context with the Arizona Constitutional provisions, is ambiguous."  She contends the stated purpose and language of article IV, pt. 2, § 22(1) establish it was intended to only require adult prosecution of a child fifteen years of age or older who has committed a violent offense.  As support for this assertion, she points to the fact that after listing the specific offenses, the constitutional provision adds, "or other violent offenses as defined by statute," thereby implying that the preceding portion refers to violent offenses.  McGuire argues this interpretation is further supported by article IV, pt. 2, § 22(2), which distinguishes the violent offenses listed in § 22(1) from other, non-violent offenses, for which a juvenile may be prosecuted as an adult in the prosecutor's discretion.  McGuire asserts the statute is ambiguous because, although armed robbery is specifically listed, that offense is not

necessarily a violent offense when, as here, the person or an accomplice is armed with, uses, or threatens to use a simulated deadly weapon. Under those circumstances, she insists, the juvenile is not subject to mandatory prosecution as an adult.

¶12 Article IV, pt. 2, § 22 and § 13-501(A) plainly and unambiguously list armed robbery among the felony offenses that require mandatory adult prosecution. In codifying the constitutional amendment, the legislature included in the subsections of § 13-501(A) the statutes that correspond to each of the specified offenses. Thus, § 13-501(A)(4) refers to § 13-1904, the armed robbery statute. Consistent with the constitutional provision, the legislature did not limit the application of § 13-1904 in § 13-501(A)(4) to robbery committed while the person or an accomplice is armed with a deadly weapon or uses or threatens to use a deadly weapon or dangerous instrument.

¶13 McGuire asserts the limitation on armed robbery is implicit in the statute based on the intent behind the constitutional provision, the statute's language, and context in which armed robbery is listed as an offense. She suggests this interpretation is further supported by the legislature's addition of aggravated assault as another "violent felony offense" pursuant to § 13-501(A)(5). The legislature only added aggravated assault resulting in "serious physical injury," A.R.S. § 13-1204(A)(1), and aggravated assault involving the use of "a deadly weapon or dangerous instrument," § 13-1204(A)(2). *See* § 13-501(H)(4). McGuire insists this reflects the legislature's intent that an actual weapon must be involved in order for an offense to be violent for purposes of § 13-501(A).

¶14 With respect to the list of offenses that require a juvenile to be prosecuted as an adult, we have found the constitutional provision clear. *Soto*, 190 Ariz. at 455, 949 P.2d at 544 (finding "'forcible sexual assault' no more vague than murder or armed robbery"). As we previously stated, the language of § 13-501(A) is equally clear. We presume that, when the legislature enacted § 13-501, it was aware that under § 13-1904, armed robbery may be based on the use or threatened use of a simulated deadly weapon. *See Lee*, 236 Ariz. 377, ¶ 23, 340 P.3d at 1092 (presuming legislature "was aware of [A.R.S.] § 13-604 or its precursor . . . when it enacted" § 13-

501). Had the legislature intended to restrict armed robbery for purposes of § 13-501(A)[1] to situations in which an actual deadly weapon or dangerous instrument was involved, "presumably [it] would have . . . done so" in § 13-501(A)(4). *Id.*; *cf. Luchanski v. Congrove*, 193 Ariz. 176, ¶ 14, 971 P.2d 636, 639 (App. 1998) ("When the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded."). It could have included a limitation in § 13-501(A)(4) similar to the limitation it placed on aggravated assault but it chose not to do so.

¶15 But even assuming McGuire is correct that the intent of both § 13-501(A) and article IV, pt. 2, § 22(1) is to require mandatory adult prosecution of juveniles only for violent offenses, we are not persuaded that armed robbery committed with a simulated deadly weapon is not a violent offense. McGuire relies on A.R.S. § 13-901.03 and this court's decision in *State v. Joyner*, 215 Ariz. 134, 158 P.3d 263 (App. 2007), for that proposition. Such reliance, however, is misplaced.

¶16 Section 13-901.03 is part of the chapter of title 13 pertaining to probation. It specifically relates to A.R.S. § 13-901.01, which codified the voter initiative entitled, "Drug Medicalization, Prevention, and Control Act of 1996," also known as Proposition 200. 1997 Ariz. Sess. Laws, Proposition 200, §§ 1, 10. The initiative and the enabling legislation were designed to reduce the legal consequences for individuals convicted of a first or second non-violent drug offense by requiring courts to place such individuals on probation instead of incarcerate them. *See State v. Rodriguez*, 200 Ariz. 105, ¶ 2, 23 P.3d 100, 101 (App. 2001). Mandatory probation, however, is not available to individuals who have "been convicted of or indicted for a violent crime as defined in § 13-901.03." § 13-901.01(B). This section, formerly numbered as A.R.S. § 13-604.04, *see*

---

[1] Given that the constitutional amendment did not limit the circumstances in which armed robbery subjects a juvenile to mandatory prosecution as an adult, we question whether the legislature would have the authority to limit it, even if the legislature had intended that result.

2008 Ariz. Sess. Laws, ch. 301, § 19, and enacted together with other Proposition-200-enabling legislation, *see* 1997 Ariz. Sess. Laws, ch. 6, § 1, provides that, "[f]or the purpose of this section, 'violent crime' includes any criminal act that results in death or physical injury or any criminal use of a deadly weapon or dangerous instrument." That definition by its own terms only applies in the context of probation under § 13-901.01; it does not apply here.

¶17 Similarly, in *Joyner*, we were asked to decide whether former § 13-604.04 rendered the defendant ineligible for mandatory probation because previously he had been convicted of attempted armed robbery and armed robbery. 215 Ariz. 134, ¶ 8, 158 P.3d at 266-67. We concluded the defendant's "prior conviction for armed robbery, as defined in § 13-1904, does not necessarily establish he used a deadly weapon or dangerous instrument because armed robbery may be committed with a simulated deadly weapon—and a 'simulated deadly weapon' may be neither deadly nor dangerous." *Id.* ¶ 10. But as we pointed out, we were "constrained by the plain language of §§ 13-604.04 and 13-1904." *Id.* n.4. We observed that, based on other definitions in other contexts, armed robbery is a "'crime[] of violence.'" *Id.*, *quoting State v. Lee*, 185 Ariz. 549, 557, 917 P.2d 692, 700 (1996).

¶18 Section 13-706, A.R.S., is an example of another context in which armed robbery is considered a violent offense, regardless of how it was committed. In that sentencing provision for "[s]erious, violent or aggravated offenders," the legislature defined "violent or aggravated felony" by listing a number of offenses, including, but not limited to, first-degree murder, second-degree murder, aggravated assault resulting in serious physical injury or involving the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument, and armed robbery. § 13-706(F)(2)(a)-(c), (q). Again, armed robbery is not restricted to robbery committed with the use of a deadly weapon or dangerous instrument. Although not applicable in this context, § 13-706 illustrates that the legislature has regarded armed robbery as a violent offense in certain contexts, without regard to how it was committed.

**¶19** The history of § 13-1904 also demonstrates that the legislature generally views armed robbery as a violent offense even if based on a simulated weapon. Our supreme court reviewed that history in *State v. Garza-Rodriguez*, 164 Ariz. 107, 109-12, 791 P.2d 633, 635-38 (1990), in which it held that a simulated weapon may be the basis for an armed robbery conviction but the simulated weapon must be present, not just suggested. The court observed that when initially adopted in 1977, the robbery statutes contained gradations of the offense in terms of its seriousness, which were reflected in varying degrees of punishment, depending on whether a real weapon was actually present. *Id.* at 109-10, 791 P.2d at 635-36; *see also* 1977 Ariz. Sess. Laws, ch. 142, § 73. The court noted that the former statutes were premised on the policy view that the person who commits a robbery with a "'toy gun'. . . is not nice . . . but he is not the dangerous type for whom the greater penalty is reserved.'" *Garza-Rodriguez*, 164 Ariz. at 110, 791 P.2d at 636, *quoting State v. Franklin*, 130 Ariz. 291, 293, 635 P.2d 1213, 1215 (1981).

**¶20** When the armed robbery statute was amended in 1983, adding "or simulated deadly weapon," the legislature eliminated the distinction between an item fashioned as or appearing to be a deadly weapon and an actual one. *Id.*; *see also* 1983 Ariz. Sess. Laws, ch. 129, § 1. As the court in *Garza-Rodriguez* observed, "Both elements reflect the policy that the greater punishment is reserved to deter the dangerous person actually capable of inflicting death or serious bodily harm or intending to create a life endangering environment by carrying a deadly or simulated deadly weapon." 164 Ariz. at 111, 791 P.2d at 637. Whether a simulated or real weapon is present, a perpetrator has forced a victim to give up his or her property by threatening violence that the perpetrator appears to be capable of carrying out. Thus, the legislature intended no distinction between armed robbery committed with an actual deadly weapon or a simulated deadly weapon. *Id.*

## Disposition

**¶21** The respondent judge correctly concluded that McGuire must be prosecuted as an adult on the charge of armed robbery based on the plain language of §§ 13-501 and 13-1904. The respondent did not, therefore, abuse his discretion by denying the

motion to dismiss the charge or, alternatively, to transfer the matter to the juvenile court. Ariz. R. P. Spec. Actions 3(c). Accordingly, we accept special-action jurisdiction but deny relief.